**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARCH INSURANCE COMPANY (EUROPE) LTD. N/K/A ARCH INSURANCE (UK) LTD., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>THOMAS K. REILLY,<br><br>*Defendant*. | Civil Action No. 20-2080<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

Presently before the Court is Defendant Thomas K. Reilly's motion to dismiss the Amended Complaint. D.E. 27. Plaintiffs filed a brief in opposition, D.E. 28, to which Defendant replied, D.E. 32. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion is **GRANTED in part** and **DENIED in part**.

I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant is the former Chief Executive Officer of non-party Chemoil Energy Ltd. ("Chemoil").[2] Am. Compl. ¶ 51-52. Chemoil is party to the Directors, Officers and Company

---

[1] Defendant's brief in support of his motion to dismiss (D.E. 24) will be referred to as "Def. Br."; Plaintiffs' opposition (D.E. 28) will be referred to as "Plfs. Opp."; and Defendant's reply (D.E. 32) will be referred to as "Def. Reply."

[2] The factual background is taken from Plaintiffs' Amended Complaint ("Am. Compl.") (D.E. 22), as well as the insurance policy at issue, which was attached as an exhibit to the pleading (D.E. 22-1). "In reviewing a facial attack" to the Court's subject matter jurisdiction, "the court must only

Liability Insurance Policy (the "Policy"), which is at issue here. *Id.*, Ex. A. Plaintiffs plead that Plaintiff DUAL Corporate Risks LTD. ("DUAL") is the Managing General Agent ("MGA") of the Policy. As the MGA, DUAL issued the Policy to Chemoil, and is responsible for handling claims under the Policy. *Id.* ¶¶ 35-36, 39, 47, 50. DUAL, however, does not make any coverage determinations and has no financial obligations under the Policy. *Id.* ¶¶ 44, 48-49. While Plaintiffs plead that DUAL is the MGA, they acknowledge that DUAL is listed as the insurer in the Policy. *Id.* ¶ 45, Ex. A at 13.

The remaining Plaintiffs, Arch Insurance Company (Europe) Ltd. n/k/a Arch Insurance (UK) Ltd. ("Arch"); Liberty Mutual Insurance SE ("Liberty"); Hiscox Underwriting Ltd. ("Hiscox"); Barbican Corporate Member Limited ("Barbican"); and Endurance at Lloyd's Limited (UK) ("Endurance"), "are each insurance entities operating within the London insurance market." *Id.* ¶ 34. Plaintiffs refer to these parties collectively as the "Capacity Providers." *Id.* ¶ 19. The Capacity Providers each subscribed to underwrite a specific percentage of the underwritten risk of the Policy. The percentages are set forth in a section of the Policy referred to as the "Written Line" or the "Security Details." *Id.* ¶¶ 40-42, Ex. A at 7. The Policy clearly states that each Capacity Provider is only liable for the proportion of liability that it underwrote and that the Capacity Providers' liability is several, not joint. *Id.* ¶ 41, Ex. A at 5. Finally, Plaintiffs allege that the Capacity Providers collectively make coverage determinations or decisions to pay claims under the Policy and communicate these decisions to DUAL. *Id.* ¶ 48.

---

consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Moreover, Federal Rule of Civil Procedure 10(c) provides that "a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, the Court considers the insurance policy at issue here in deciding the instant motion.

Defendant Reilly resigned as CEO of Chemoil in 2014 and initiated an arbitration proceeding against Chemoil regarding his right to severance payments. *Id.* ¶ 52. Reilly personally paid for the arbitration and did not initially seek coverage under the Policy for the fees and costs he incurred through the arbitration. *Id.* ¶¶ 53-54. Plaintiffs plead that Reilly did not seek coverage because he knew his claims were not covered by the policy. *Id.* ¶ 54. Chemoil subsequently asserted counterclaims against Reilly. As a result, in March 2017, Reilly sought coverage for defense and indemnification of the counterclaims. *Id.* ¶¶ 55-56. "Plaintiffs agreed that Reilly was an insured under the Policy with respect to the Chemoil [c]ounterclaims only." *Id.* ¶ 57. Thus, the Capacity Providers, through DUAL, agreed to pay fees and costs incurred to defend Reilly against the counterclaims, and Reilly continued to personally pay for the fees and costs associated with his affirmative claims. *Id.* ¶ 61.

Reilly initially sought approximately $1.48 million dollars from Plaintiffs, claiming that all his attorneys' fees and costs were incurred through defense of the counterclaims. *Id.* ¶ 62. The Capacity Providers, through DUAL, disagreed, and paid Reilly approximately $888,000. *Id.* ¶¶ 63-64. DUAL allegedly told Reilly that this was an "interim payment" and that any further payments would remain subject to negotiation between the parties. *Id.* ¶ 67. Reilly accepted the $888,000 payment. *Id.* ¶ 66.

In January 2018, the arbitration panel rendered a decision that was "largely in favor of Reilly" and "highly critical" of Chemoil's conduct. *Id.* ¶ 68. In addition, the arbitration panel permitted Reilly to make an application to recover all his legal fees and costs. *Id.* ¶ 71. Reilly submitted a fee application seeking reimbursement of approximately $2.1 million, which included fees and costs he incurred as to the affirmative claims and counterclaims. *Id.* ¶ 75. Plaintiffs allege that Reilly's fee application included the $888,000 payment from Plaintiffs. *Id.* ¶¶ 79-80.

Reilly and Chemoil subsequently settled the fee claim for $1.2 million. Plaintiffs were excluded from Reilly and Chemoil's settlement negotiations. *Id.* ¶¶ 82-83, 89. The Capacity Providers, again through DUAL, objected to any settlement without their input and consent, and advised Reilly that pursuant to the Policy, he could not settle the fee claim without the Capacity Providers' consent. *Id.* ¶¶ 84-86. The Capacity Providers also told Reilly that they did not consent to the proposed settlement, but Reilly moved forward despite their objections. *Id.* ¶¶ 88-89. Plaintiffs contend that the settlement deprived them of their rights under the Policy and specifically, of their right to recoup the $888,000 payment to Reilly. *Id.* ¶¶ 90-91. Despite Plaintiffs demands, Reilly has not reimbursed Plaintiffs for any portion of the $888,000 payment. *Id.* ¶¶ 92-93.

During the parties' discussions about Reilly's settlement with Chemoil, Reilly brought suit against DUAL seeking a declaratory judgment stating that he is not required to reimburse DUAL under the Policy (the "Reilly Action"). D.E. 1, Civ. No. 18-16836 (D.N.J. Dec. 4, 2018). Reilly also asserted claims for breach of contract and breach of the duty of good faith and fair dealing. *Id.* DUAL asserted counterclaims for a declaratory judgment stating that, pursuant to the Policy, Reilly was not entitled to coverage for any of his affirmative claims, in addition to counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.[3] D.E. 9, Civ. No. 18-16836 (D.N.J. Jan. 11, 2019). The Capacity Providers then initiated the instant matter, seeking to recover the $888,000 payment. Specifically, the Capacity Providers assert a declaratory judgment claim, breach of contract claims, and an unjust enrichment claim. D.E. 1.

---

[3] The parties subsequently filed amended pleadings in the Reilly Action that did not materially change their claims. D.E. 13, Civ. No. 18-16836 (D.N.J. Feb. 1, 2019); D.E. 20, Civ. No. 18-16836 (D.N.J. May 13, 2019).

4

On June 9, 2020, DUAL and the Capacity Providers filed a letter in the Reilly Action requesting that the two matter be consolidated. D.E. 75, Civ. No. 18-16836 (D.N.J. June 9, 2020). On July 28, 2020, Judge Mannion consolidated the matters for discovery purposes. D.E. 76, Civ. No. 18-16836 (D.N.J. July 28, 2020). In this matter, on March 20, 2021, the Capacity Providers were granted leave to file an amended complaint that added DUAL as a Plaintiff. D.E. 97. Judge Kiel also ordered that Reilly prosecute the claims asserted against DUAL in the Reilly Action by way of a counterclaim (or third-party claim if the Capacity Providers did not file an amended pleading). *Id.* Finally, the Reilly Action was stayed pending further order of the Court. *Id.*

The Capacity Providers subsequently filed their Amended Complaint on March 22, 2021, that, among other things, added DUAL as a Plaintiff. D.E. 22. Reilly then filed the instant motion to dismiss the Amended Complaint. D.E. 27.

## II.     STANDARD OF REVIEW

Reilly asserts that this matter should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction, and Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

To decide a Rule 12(b)(1) motion to dismiss, a court must first determine whether the party presents a facial or factual attack against a complaint. A facial attack contests "subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack challenges "the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis*, 824 F.3d at 346 (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Here, in

seeking dismissal for lack of subject-matter jurisdiction, the parties rely solely on Plaintiffs' allegations in the Complaint. Accordingly, Defendant presents a facial attack. As a result, like a Rule 12(b)(6) motion to dismiss, "the Court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Moreover, under Rule 10(c), "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

### III. ANALYSIS

#### A. Standing

The Constitution provides that "judicial Power" extends to "Cases" and "Controversies[.]" U.S. Const. art. III, § 2. To meet the case-or-controversy requirement, a plaintiff must show that she has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted). To

establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision."' *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 358–59 (3d Cir. 2015) (internal quotation marks omitted and punctuation modified)). An injury in fact requires a plaintiff to show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Defendant argues that DUAL has not suffered an injury-in-fact based on DUAL's representations in the Reilly Action that only the Capacity Providers had a financial interest in the Policy. Def. Br. at 13. Defendant further maintains that DUAL is bound by its representations pursuant to the doctrine of collateral estoppel. *Id.* at 13 n.6. Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has already been decided. *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). Issue preclusion applies when the following requirements are satisfied: "(1) the issue must be identical; (2) the issue must have actually been litigated in a prior proceeding; (3) the prior court must have issued a final judgment on the merits; (4) the determination of the issue must have been essential to the prior judgment; and (5) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the earlier proceeding." *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 (3d Cir. 2002). Here, Defendant relies on representations that DUAL made in a letter to Judge Mannion, specifically that DUAL is the MGA and not an insurer of the Policy. D.E. 15, at *2-3, Civ. No. 18-16836 (D.N.J. Mar. 26, 2019). But this issue has not been litigated and there is no final judgment in Reilly Action. In fact, the Reilly matter is presently stayed. D.E. 20. Accordingly, issue preclusion does not apply.

The Court, therefore, addresses Plaintiffs' allegations in this matter to determine if DUAL suffered an injury-in-fact. Defendant argues that Plaintiffs' allegation that DUAL "is authorized" to sue on behalf of the Capacity Providers does not give DUAL standing, and that because it is not an insured, it has not suffered an injury-in-fact. Def. Br. at 14. Although Defendant relies on DUAL's prior representation that DUAL is mistakenly identified as the insurer in the Policy, the Court must take Plaintiffs' allegations as true in deciding this motion. *See Fowler*, 578 F.3d at 210. Because Plaintiffs included the Policy as an exhibit to the Amended Complaint, the Policy itself is part of the pleadings. Fed. R. Civ. P. 10(c).

In the Amended Complaint, Plaintiffs plead that the Policy identifies DUAL as the insurer. Am. Compl. ¶ 45. This is reflected in the Policy. *Id.*, Ex. A at 13. Therefore, as alleged, DUAL is a party to the Policy. It is axiomatic that a party to a contract has standing to enforce the terms of the contract. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *8 (D.N.J. May 8, 2017) ("Basic contract law requires parties to be in privity with each other in order for them to enforce the terms of a contract."); *see also Fireman's Fund Ins. Co. v. 360 Steel Erectors, Inc.*, No. 16-2782, 2018 WL 1069418, at *3 (D.N.J. Feb. 26, 2018) (concluding that at a minimum, the plaintiff had standing to enforce an agreement to which it was a party). As discussed, Plaintiffs' pleadings identify DUAL as a party to the Policy as the insurer. Based on these allegations, DUAL has Article III standing.[4]

---

[4] The Court notes that Plaintiffs' allegations appear inconsistent, especially considering DUAL's representation in the Reilly Action that DUAL was mistakenly identified as the insurer. Although Plaintiffs plead that DUAL is the insurer and it is listed as the insurer in the Policy, Plaintiffs also plead that DUAL is pursuing claims on behalf of the Capacity Providers and that DUAL has no financial obligations under the Policy. Am. Compl. ¶¶ 44, 50. This, however, is an issue that can be addressed through discovery, and if appropriate, the parties can amend their pleadings at a later date. DUAL and the Capacity Providers, however, are all named Plaintiffs in this matter. As a result, there is no risk, like in many of the cases cited by the parties, that the Court will not be able to afford complete relief to the prevailing party or that an entity is somehow evading its obligations

In addition, because Plaintiffs plead that DUAL is the insurer in the Policy, DUAL appears to be a real party in interest pursuant to Federal Rule of Civil Procedure 17(a). Rule 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest," but provides a list of individuals who may sue in their own name "without joining the person for whose benefit the action is brought." Fed. R. Civ. P. 17(a). Relevant here, courts recognize that without offending Rule 17(a), an agent that is not personally harmed may sue for damages incurred by its principal. *See Int'l Transport Mgmt. Corp. v. Brooks Fitch Apparel Grp., LLC*, No. 11-1921, 2018 WL 1960440, at *5-6 (D.N.J. Apr. 26, 2018) (concluding that ocean transport intermediary was the real party in interest for claims seeking to recover damages that were actually incurred by an affiliate); *see also Glob. Aerospace, Inc. v. Platinum Jet Mgmt., LLC*, 488 F. App'x 338, 340 (11th Cir. 2012) (explaining that pursuant to Rule 17(a), "[a]n agent 'who acted as an agent during the course of [a] transaction involved in the litigation, may sue for damages suffered by the principal.'" (quoting *Corp. of the President of the Church of Jesus Christ of Latter Day Saints v. Envtl. Prot. Comm'n of Hillsborough Co.*, 837 F. Supp. 413, 415 (M.D. Fla. 1993))). Thus, even if DUAL was not named as the insured in the Policy, it appears that DUAL has standing based on Plaintiffs' allegations that DUAL is the MGA for the Capacity Providers and has authority to pursue claims on their behalf. Defendant's arguments to the contrary are distinguishable and ignore the realities of Lloyd's insurance model, as discussed below.

Turning to the Capacity Providers, Defendant seeks to dismiss the claims asserted by the Capacity Providers for lack of standing because they fail to expressly identify themselves as

---

under the Policy. Thus, Defendant's insinuations that Plaintiffs are somehow gaming the system appear overstated.

contracting parties to the Policy. Even if they had, Defendant argues that such allegations conflict with the Policy. Def. Br. at 17-18. The Court disagrees.

Plaintiffs allege that the Capacity Providers bear the financial risks and obligations under the Policy, Am. Compl. ¶ 7, and make all coverage and payment decisions, *id.* ¶¶ 48-49. Moreover, the Capacity Providers allegedly "provide the financial capacity and assume all financial risks and obligations under the Policy." *Id.* ¶ 19. The Capacity Providers' exposure to risk is also reflected in the Policy itself. In the section entitled "Security Details," the Policy provides that "[a] (re)insurer is liable only for the proportion of liability it has underwritten," and the proportion of liability "is shown next to its stamp and is referred to as its 'written line.'" *Id.*, Ex. A at 5. After this explanation and within the Security Details section, appears the following:



*Id.*, Ex. A at 7. Plaintiffs also set forth these specific percentages in the Amended Complaint. *Id.*, ¶ 42. Thus, the Amended Complaint and Policy are not inconsistent and demonstrate that the Capacity Providers have a financial interest in this matter. The language in the Security Details section about the proportion of risk also further demonstrates that the Capacity Providers are

10

insurers of the Policy. *See Lowsley-Williams v. N. River Ins. Co.*, 884 F. Supp. 166, 167 (D.N.J. 1995) ("The holders of policies reinsured by Lloyd's Names thus enter into contractual relationships with the specific Names who have subscribed to the policies for the portion of the risk that each Name has agreed to underwrite."); *CNX Gas Co., L.L.C. v. Lloyd's of London*, 410 F. Supp. 3d 746, 749 (W.D. Pa. 2019) (explaining that under the Lloyd's insurance model, there is a contractual relationship between the insured and individual Names, who are Lloyd's members that underwrite shares of an insurance policy and that each Name is only liable for its proportional share).[5] Consequently, the Policy establishes that the Capacity Providers also have standing.

Defendant maintains that the Capacity Providers are DUAL's reinsurers because the Policy uses the word "(re)insurer." Defendant continues that any reinsurance contracts are separate and distinct contracts, such that the Capacity Providers do not have standing to assert claims related to the Policy at issue here. Def. Br. at 18. Although the Policy uses the word "(re)insurer," Defendant ignores Plaintiffs' allegations. There are no allegations discussing a separate contract or indicating that the Capacity Providers are reinsurers in the Amended Complaint. Rather, the Policy itself demonstrates that it is a claims-made insurance policy for Chemoil Energy Limited and that the Capacity Providers underwrote a specific percentage of the risk. Am. Compl., Ex. A at 11. Even if Defendant is correct that DUAL is the insurer and the Capacity Providers are reinsurers, the written line in the Policy sets forth the Capacity Providers' purported reinsurance obligations.

---

[5] Plaintiffs plead that within the London insurance market, where there are often numerous entities subscribing to a single policy, the Capacity Providers retained DUAL to act on their behalf. Am. Compl. ¶ 46. Although not alleged in the Amended Complaint, the Court notes for context that Plaintiffs argue in their opposition brief that an agent simplified communications for the insured because it "obviated the need for Reilly to simultaneously communicate with five separate insurance entities." Plfs. Opp. at 14.

Thus, even under this argument, the Policy still establishes that the Capacity Providers have a financial interest and thus have standing.

In sum, the Court concludes that Plaintiffs have standing to assert claims in this matter. Defendant's motion is denied on these grounds.

### B. Diversity Jurisdiction

Next, Defendant argues that this matter must be dismissed for lack of subject-matter jurisdiction because the Amended Complaint fails to clearly set forth citizenship of the Capacity Providers. Def. Br. at 19-20. Plaintiffs allege that this Court has diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, for the claims of Arch, Liberty, Hiscox and DUAL. Am. Compl. ¶¶ 23, 27. Plaintiffs further allege that the Court has supplemental jurisdiction under 28 U.S.C. § 1367(a), over the remaining claims. *Id.* ¶ 30. Federal district courts have diversity jurisdiction, under Section 1332, where "the matter in controversy exceeds the sum or value of $75,000" and the parties are completely diverse. 28 U.S.C. § 1332(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). For cases that involve multiple plaintiffs or defendants, complete diversity means that "no plaintiff [is] a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).

#### 1. Diversity of Citizenship

Before addressing the merits, a brief explanation of the London insurance model is necessary. In the model, individuals or "names" pool resources and underwrite policies as groups. As discussed above, names are only responsible for their proportional share. *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 221 (3d Cir. 1999). "[T]o increase the efficiency of underwriting risks and to combine the resources of numerous individuals, names form groups called syndicates. However, syndicates are not legal entities." *Id.* But syndicates can

appoint an "Active Underwriter" who "has the authority to bind all the individuals in the syndicate." *Id.* at 222.

There is a circuit split as to whose citizenship is relevant for diversity jurisdiction purposes under the Lloyd's model. The Third Circuit has not yet addressed the issue. *CNX Gas Co., L.L.C.*, 410 F. Supp. 3d at 754-55. But the majority view of the circuit courts is that a court should consider the citizenship of every name, not that of the syndicate or the Active Underwriter. *Id.* (explaining that the Second, Seventh and Eleventh Circuits "form the majority regime" on this issue). District courts within the Third Circuit also appear to follow the majority approach. *Id.* at 755 (collecting cases). In this instance, the parties also follow the majority approach. Def. Br. at 19; Plfs. Opp. at 18. Seeing no clear reason to deviate, the Court applies the majority position.

Accordingly, for the Court to properly ascertain whether the parties are completely diverse, Plaintiffs must sufficiently plead the citizenship of each Name that subscribed to the Policy. *Lowsley-Williams*, 884 F. Supp. at 172 ("Because citizenship is determined for a Lloyd's syndicate by the sum of the citizenship of all participating Names, the plaintiff must have pled the citizenship of each name participating in the North River reinsurance contracts in order for this Court to have diversity jurisdiction."). And for diversity jurisdiction to exist, Defendant must be completely diverse from each Name. *Certain Underwriters at Lloyd's, London, Subscribing to Policy No. AMT008174 v. VMA Constr., LLC*, No. 17-5626, 2018 WL 314815, at *3 (D.N.J. Jan. 5, 2018).

Plaintiffs fail to plead sufficient facts to establish that there is complete diversity. At the outset, Plaintiffs plead that Defendant was a resident of Connecticut. Am. Compl. ¶ 21. While not raised by Defendant, stating that a party is a "resident" rather than a citizen or domiciliary of a state is "jurisdictionally inadequate." *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 219 n.4 (3d Cir. 2012). Turning to Plaintiffs, Plaintiffs pleads that Arch is incorporated under the laws of

13

England and has its principal place of business in London. Am. Compl. ¶ 13. Similarly, Plaintiffs plead that Liberty is incorporated in and has its principal place of business in Luxembourg. *Id.* ¶ 14. These allegations are sufficient for determining the citizenship of Arch and Liberty. Next, Plaintiffs allege that Hiscox is incorporated under the laws of England and Wales, and that its principal place of business is in London. *Id.* ¶ 15. The Policy, however, indicates that Hiscox is part of Syndicate 3624 at Lloyd's. *Id.*, Ex. A at 7. Plaintiffs provide no further information about any other member of this Syndicate. Thus, this allegation is insufficient because it fail to identify the other members, along with their citizenship, of Syndicate 3624. Finally, Plaintiffs plead that Barbican FI Consortium 2013 (identified in the Policy as BFP Consortium 9582 at Lloyd's) is comprised of Lloyd's Syndicate 1955 and Lloyd's Syndicate 5151. *Id.* ¶ 16. Barbican is the sole member of Syndicate 1995, *id.* ¶ 17, but Plaintiffs simply plead that Endurance manages Lloyd's Syndicate 5151, *id.* ¶ 18. Again, Plaintiffs' Amended Complaint does not include allegations about the members of Lloyd's Syndicate 5151. Plaintiffs, therefore, fail to provide enough information for the Court to confirm whether Defendant is completely diverse from Plaintiffs. Because the Court cannot ascertain if there is complete diversity of citizenship, Defendant's motion to dismiss is granted on these grounds.

In their opposition brief, however, Plaintiffs argue that Hiscox is the sole Name of Lloyd's Syndicate 3624 and Endurance is the sole Name of Lloyd's Syndicate 5151.[6] Plfs. Opp. at 18. These allegations do not appear in the Amended Complaint but would allow the Court to conclude that the parties were completely diverse. Plaintiffs cannot amend their pleading through a brief. *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It

---

[6] By definition, a syndicate is a group, so the Court is not clear as to how a single entity can comprise a syndicate.

14

is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)). But it appears that Plaintiffs can remedy these deficiencies through an amended pleading. Consequently, the Court grants Plaintiffs leave to file an amended pleading that includes these additional allegations. Because it is granting Plaintiffs leave to amend, the Court will address Defendant's remaining arguments for dismissal.

### 2. Amount in Controversy

Defendant maintains that the Amended Complaint must be dismissed because Barbican and Endurance are indispensable parties that cannot be joined. Def. Br. at 20-21. Defendant argues that because Barbican and Endurance are part of an insurance collective, they must independently satisfy the amount of controversy requirement. Defendant continues that because together, Barbican and Endurance only claim a 5% stake of the $888,0000, they do not meet the amount in controversy threshold. *Id.*

To make this argument, Defendant relies on case law that likens a Lloyd's syndicate to a limited partnership for the purpose of ascertaining citizenship of diversity purposes. *Id.* at 21 (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 188-95 (1990); *Lowsley-Williams*, 884 F. Supp. at 169-72). These cases, however, do not address the amount in controversy requirement. Defendant also cites *Lloyd's v. Gailes*, No. 16-77, 2016 WL 3033741, at *3-4 (N.D. Miss. May 26, 2016). In *Gailes*, the court determined that the jurisdictional requirement must be satisfied as to each name. *Id.* at *4. But *Gailes* is not binding on this Court, and neither party points the Court to any persuasive authority from the Third Circuit that addresses the amount in controversy requirement under the Lloyd's business model. Accordingly, the Court applies the general rule that although distinct claims from separate plaintiffs cannot be aggregated, the amount in

15

controversy requirement is satisfied if a single plaintiff's claims against the defendant are valued at more than $75,000. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002). Here, Liberty funded 41% of the Policy, such that it could conceivably recover approximately $364,000 from the $888,000 that DUAL, through the Capacity Providers, made to Defendant. Plaintiffs, therefore, satisfy the amount in controversy requirement. And the Court may exercise supplemental jurisdiction over the other Plaintiff's claims pursuant to 28 U.S.C. § 1337. *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005).[7]

### C. Failure to State a Claim

Finally, Defendant seek to dismiss the Amended Complaint pursuant to Rule 12(b)(6). Def. Br. at 23-27. At the outset, the Court notes that the Policy contains a choice of law provision stating that the Policy "shall be governed by and construed in accordance with the law of England & Wales." Am. Compl., Ex. A. at 2. In addition, in the Amended Complaint, Plaintiffs plead that they intend for the laws of England and Wales to apply to Counts One, Two, and Three. Am. Compl. ¶ 38 n.1. Plaintiffs, however, otherwise rely on New Jersey law. Defendant does not address the choice of law issue in his reply brief. Moreover, Defendant cites to New Jersey case law in his opening brief, even though he resides in Connecticut, and Plaintiffs are not based in the

---

[7] The parties dispute whether Barbican and Endurance are properly joined under Federal Rule of Civil Procedure 19 or 20. *See* Def. Br. at 20-22 (arguing that Barbican and Endurance are required parties under Rule 19); Plfs. Opp. at 19-21 (maintaining that Barbican and Endurance may be permissibly joined under Rule 20). The Court will not address this issue because it is immaterial. Barbican and Endurance are already Plaintiffs in the Amended Complaint, this Court has supplemental jurisdiction over their claims pursuant to 28 U.S.C. § 1367, and Defendant does not contend that keeping either entity in this litigation destroys diversity jurisdiction. Defendant seems to confuse joinder with jurisdiction. *See* Def. Br. at 21-22 (arguing that because Barbican and Endurance are indispensable parties, they may not invoke supplemental jurisdiction under Section 1367). But Rule 19 "address[es] party joinder, not federal-court subject-matter jurisdiction." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005). Whether supplemental jurisdiction exists pursuant to Section 1367 is a separate issue.

United States. *See, e.g.*, Def. Br. at 23. Thus, the Court has doubts that New Jersey law will apply to Plaintiffs' substantive claims. But because the parties predominately rely on New Jersey law and do not address the choice of law issue in substance, the Court will also rely on New Jersey law in assessing Plaintiffs' claims for purposes of deciding this motion.

Defendant contends that Plaintiffs' breach of contract claims, including the breach of the implied covenant of fair dealing claim, must be dismissed because Plaintiffs fail to plead that they were parties to the Policy. Def. Br. at 23-24. To state a claim for breach of contract under New Jersey law, a party must allege, among other things, that "the parties entered into a contract." *Pollack v. Quick Quality Rests., Inc.*, 172 A.3d 568, 576 (N.J. App. Div. 2017) (citing *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)); *see also Comly v. First Camden*, 36 A.2d 591, 593 (N.J. Sup. Ct. 1944) ("However, it may be said that as a general rule an action on a contract cannot be maintained against a person who is not a party to it."). In addition, "in the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Noye v. Hoffman-La Roche Inc.*, 570 A.2d 12, 14 (N.J. App. Div. 1990); *see also FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (stating that the circuit did not believe that the New Jersey Supreme Court would support "the proposition that *non-parties* to a contract can be held liable for a breach of a contractual duty of good faith and fair dealing") (emphasis in original). As pled, Plaintiffs are all parties to the Policy. As discussed, DUAL is named as the Insurer and the Capacity Providers' proportion of liability is clearly set forth in the Policy. As noted, the Court disagrees with Defendant's argument that DUAL is estopped from retracting its representation in the Reilly Action that it is not the Insurer. Accordingly, because Plaintiffs sufficiently plead that they are parties to the Policy, Defendant's motion is denied as to Plaintiffs' breach of contract claims.

Defendant also seeks to dismiss Plaintiffs' declaratory judgment and unjust enrichment claims for the same reasons, arguing that Plaintiffs do not have any rights under the Policy. Def. Br. at 25-27. Again, the Court disagrees. Consequently, Defendant's motion is also denied as to the unjust enrichment and declaratory judgment claims.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.E. 27) is **GRANTED in part** and **DENIED in part**. Defendant's motion is **GRANTED** as to Plaintiffs' failure to sufficiently plead diversity jurisdiction. Plaintiffs, however, are granted leave to file an amended pleading that remedies the identified deficiencies. Plaintiffs' amended pleading must be filed within thirty (30) days of the date of this Opinion and the accompanying Order. If Plaintiffs fail to file an appropriate amended pleading within this time, this matter will be dismissed for lack of subject-matter jurisdiction. Defendant's motion is otherwise **DENIED**. An appropriate Order accompanies this Opinion.

Dated: October 8, 2021

_____
John Michael Vazquez, U.S.D.J.